IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FREDERICK GATLIN, | ) | No. C 07-3696 CW (PR) |
| Petitioner, | ) ) | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS |
| v. | ) ) | (Docket no. 6) |
| JAMES TILTON, | ) | |
| Respondent. | ) ) | |

## INTRODUCTION

Petitioner Frederick Gatlin, a state prisoner, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent James Tilton filed a motion to dismiss for untimeliness. Petitioner filed an opposition, and Respondent subsequently filed a reply. Having considered the papers submitted, the Court GRANTS Respondent's motion to dismiss.

## PROCEDURAL BACKGROUND

On November 9, 1998, Petitioner was convicted of vehicle theft under Cal. Veh. Code § 10851 and, based upon two prior robbery convictions, sentenced to twenty-five years to life pursuant to California's Three Strikes law. Petitioner appealed the judgment to the California Court of Appeal where his conviction was affirmed on August 2, 2000. He subsequently filed a petition for review in the California Supreme Court which was denied on October 18, 2000.

On September 28, 2006, after a period of over five years, Petitioner filed a petition for a writ of habeas corpus in the Santa Clara Superior Court. The petition was denied on October 30, 2006. He filed a petition for a writ of habeas corpus in the

California Court of Appeal on December 6, 2006, which was denied on December 21, 2006.  Finally, he filed a petition for a writ of habeas corpus in the California Supreme Court on January 16, 2007, which was denied on June 20, 2007.

On July 18, 2007, Petitioner filed the instant petition.[1] Respondent filed a motion to dismiss, claiming that Petitioner had failed to file his petition within the statute of limitations.  On December 31, 2007, Petitioner responded by arguing that he was entitled to equitable tolling based upon his mental illness, his use of psychotropic medicines, and the physical ailments that he suffered from 2004 until 2006.  On January 10, 2008, Respondent filed a reply.

## DISCUSSION

The AEDPA became law on April 24, 1996 and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the

---

[1] A pro se federal habeas petition is deemed filed on the date it is delivered to prison authorities for mailing.  See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than the date it is received by the courts).  July 18, 2007 is the date the instant petition was signed and the earliest date that the petition could have been delivered to prison authorities for mailing.  The Court assumes for the purposes of this discussion that the petition was delivered to prison authorities on that date.

constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Also, "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." Id. § 2244(d)(2).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).

The one-year period generally will run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Direct review" includes the ninety-day period during which a criminal appellant can file a petition for a writ of certiorari from the United States Supreme Court, whether he actually files such a petition or not. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). In the present case, the judgment became final for purposes of the statute of limitations on January 19, 2001 because Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court within ninety days. Bowen, 188 F.3d at 1159.

3

Accordingly, Petitioner was required to file a federal habeas corpus petition no later than January 18, 2002. Because he did not file the present petition until July 18, 2007 -- more than five years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

I.   STATUTORY TOLLING

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. As noted earlier, AEDPA's one-year limitations period is tolled under § 2244(d)(2) for "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . . . "  28 U.S.C. § 2244(d)(2).  The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. Carey, 536 U.S. at 223. In California, where prisoners generally use the state's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. See id. at 220-25.

Petitioner filed his state habeas petition in the Santa Clara County Superior Court on September 28, 2006. However, he is not entitled to tolling under Section 2244(d)(2) because the limitations period had already run on January 18, 2002. A state

4

habeas petition filed after AEDPA's statute of limitations ended cannot toll the limitations period. "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (holding that Oregon's two-year limitations period for the filing of state habeas petitions does not alter the operation of the AEDPA, even though prisoners who take full advantage of the two-year period will forfeit their right to federal habeas review). Section 2244(d)(2) cannot revive the limitations period once it has run. It cannot restart the clock to zero; it can only serve to pause a clock that has not yet fully run. Thus, in order to toll the limitations period under § 2244(d)(2), Petitioner should have begun to pursue collateral relief in state court before AEDPA's one-year limitations period had expired. See Ferguson, 321 F.3d at 823; see also Rashid v. Kuhlmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations").

Accordingly, the state petition filed on September 28, 2006 does not revive the limitations period because it had already expired. Therefore, without more, Petitioner is not entitled to statutory tolling of the statute of limitations.

II. EQUITABLE TOLLING

The one-year limitations period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. See Beeler, 128 F.3d at 1288. "When external forces, rather than a petitioner's lack of diligence, account for

5

the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond [a] prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted). The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002). "'[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule.'" Id. at 1066 (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.), cert. denied, 531 U.S. 878 (2000)). The grounds for granting equitable tolling are "highly fact dependant." Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002). Where a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to file a federal habeas application timely, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005), amended, 447 F.3d 1165 (9th Cir. 2006).

However, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." Lott, 304 F.3d at 920. When

6

a prisoner is proceeding pro se, his allegations regarding diligence in filing a federal petition on time must be construed liberally. Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

The Court must also take care not to deny a motion for equitable tolling before a sufficient record can be developed. In Laws v. Lamarque, the Ninth Circuit reversed the district court's order granting a motion to dismiss because it failed to develop the record in response to Laws's claim of mental incompetency. 351 F.3d 919, 924 (9th Cir. 2003). At the time the district court dismissed the petition, the record showed that a divided panel of psychiatric experts had concluded that Laws was competent at the time of his trial. However, the record did not contain any medical records from the period for which equitable tolling was requested. Id. at 923. Further, the respondent had not provided any evidence to rebut Laws's assertion that he was "deprived of any kind of cons[ci]ousness." Id. at 924. The Ninth Circuit determined that a district court should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling. Id. Instead, Ninth Circuit cases require only that there be "circumstances consistent with [the] petitioner's petition . . . under which he would be entitled to . . . equitable tolling" to trigger further factual development of the record. Id. (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding)). The Ninth Circuit found that the district

7

court erred in granting judgment against Laws because, in light of the inadequate record and unrebutted assertions before it, "[i]t [was] enough that Laws 'alleged mental competency' in a verified pleading." Laws, 351 F.3d at 924 (citations omitted). The court was careful to point out, however, that "a petitioner's statement, even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced." Id. Therefore, the Ninth Circuit held that Laws was entitled to further factual development or an evidentiary hearing on the issue of whether he was precluded from filing his petition by reason of mental impairment. Id. Thus, under Laws, a district court may not grant a motion to dismiss merely because a petitioner fails to provide evidence beyond conclusory statements to support his claim for equitable tolling. Rather, the court may only dismiss a claim in the presence of a sufficiently developed record containing "countervailing evidence" that rebuts a petitioner's claim. Id.

    The facts contained in the discussion below are based upon the allegations in Petitioner's opposition to the motion to dismiss and Respondent's reply, as well as Petitioner's prison medical file submitted as Exhibits A, B and C.

    Petitioner's first argument for equitable tolling is based on his mental illness. He contends that, after he was sentenced and incarcerated, his psychological condition became much worse than it had been and prevented him from filing a habeas corpus petition.

    He also claims that "from 2001 until 2004, he was under numerous psychotropic medications . . . due to his suffering from

hallucinations and delusions that affected his ability to sleep, eat and/or rational thought patterns." (Id., Ex. C at 6.) He suggests that these "numerous psychotropic medications" also contributed to his inability to file his petition. (Id. at 6.)

In 2004, Petitioner's psychotropic medication was discontinued for eight weeks so that he could be treated for Hepatitis C. (Id.) He argues that the residual effects of his psychological medication, coupled with the new hepatitis medication, "could have" resulted in the onset of "serious medical problems . . . . which effectively hindered and/or prohibited his ability [to] acknowledge and understand his legal obligations pursuant to the AEDPA" from 2004 through 2006. (Id.)

In sum, Petitioner claims he is entitled to equitable tolling because he suffered from mental illnesses, medication-related impairments, and physical ailments during the time period in which he should have filed his state and then federal habeas petitions from January 19, 2001 to September 28, 2006. (Pet'r Opp'n at 5-8.) None of these claims is sufficient to establish a basis for equitable tolling.

It is undisputed that Petitioner suffers from some degree of mental illness. Severe mental illness is an extraordinary circumstance beyond a prisoner's control which justifies equitable tolling. However, a showing of mental illness alone will not necessarily toll the limitation period because most mental illnesses are treatable, and with proper treatment many sufferers are capable of managing their own affairs. See Miller v. Runyon, 77 F.3d 189, 192 (7th Cir.), cert. denied, 519 U.S. 937 (1996).

9

Petitioner was twice evaluated by Dr. J. Kline prior to the conclusion of his trial. The first evaluation determined that he was competent to stand trial, and the second determined that he did in fact suffer mental disorders. (Pet'r Opp'n, Ex. A at 8.) The second evaluation stated in pertinent part:

> Mr. Gatlin has been diagnosed in the past with major depression (1993) with at least three suicide attempts, schizoaffective disorder versus paranoid schizophrenia versus bipolar disorder (1993, 1994), anxiety reaction (1994), dysthymic disorder (1994), and bipolar disorder in the hypomanic phase (1997).

(Id. at 5.) Dr. Kline ultimately concluded that Petitioner "has a relatively sustained psychotic thought process, but it does not manifest itself in florid and sustained auditory hallucinations or delusions."[2] (Id. at 8.)

Petitioner claims that his "condition worsened" in the period following his sentencing and persisted until he filed his first state habeas petition in 2006. (Id. at 5.) He was placed into the Enhanced Outpatient Program (EOP) and "on occasion was placed in single cell status until he was psychiatrically stabilized." (Id. at 4.) In his February 26, 2002 psychological evaluation, the doctor's assessment of Petitioner stated that he was "psychotic" and ordered both an increase in his medication and placement into a single cell. (Id., Ex. B.) A subsequent report in June, 2002 stated that Petitioner was having "not much problem psychiatrically." (Id.) Nevertheless, he was again placed in a single-cell in October, 2002. (Id.) Petitioner's Case Management Progress Note for January, 2003 stated that his condition

---

[2] The record does not disclose whether Petitioner was on any medication at the time of this evaluation.

10

"remained the same," but that he was "not med compliant" and that he possessed "no acute symptoms at this time." (Id.) In March, 2003, his condition seems to have improved markedly. According to the progress note, Petitioner was allowed to have a cell mate again, his "level of [mental health] program participation" had been recently reduced, he sounded "rational and coherent," and he denied experiencing "any issues." (Id.) The final report in the record (November, 2004) states that Petitioner's condition had improved, but he was refusing to take his medication.

Petitioner's argument concerning his deteriorating mental state does not qualify him for equitable tolling. The evidence in the record is insufficient to support Petitioner's claim that his condition worsened significantly. The record does not show any decline in Petitioner's condition despite the fact that he refused to take his medication at various times. In fact, Dr. Kline's 1998 report, the June, 2002 progress report, the January, 2003 Case Management Progress note, and the March, 2003 report state that Petitioner's condition was improving. Therefore, the evidence weighs heavily against his assertion that he was incapable of filing his petition.

Petitioner also argues that his psychotropic medication, which he allegedly took except for an eight-month period in 2004, prevented him from exercising his rights under AEDPA. This argument is not persuasive. Certainly, his medical records indicate that he was depressed, paranoid, and experienced hallucinations, but it is counter-intuitive to suggest that his medication, which was prescribed to help him cope with his

11

problems on a daily basis, was also the cause of his inability to exercise his legal rights. It is even more illogical to do so based upon Petitioner's speculative claim that his deficiency "could have resulted" from use of the medicine. Petitioner has not described the effects of his medication. Furthermore, numerous progress notes in his file indicate "NO evidence of any side effects" from his medication. (Pet'r Opp'n, Ex. B.) The record also indicates that Petitioner was "not med compliant," refusing to take his medication at various times. (Id.)

Even if Petitioner had periodic psychological problems, he would have to show that he was unable at any time during that five-year period to file his federal habeas petition. This he has not done. Petitioner has also failed to provide any evidence detailing how or at what point his condition improved. While the records leading up to 2004 demonstrate that Petitioner's psychiatric condition was improving, there are no psychological evaluations after 2004 in the record. Having now submitted his state and federal habeas petitions, he is apparently capable of understanding his AEDPA rights and obligations. For these reasons, Petitioner's arguments for equitable tolling based upon his mental illness and the effects of his psychotropic medication are without merit.

Finally, Petitioner argues that his "hepatitis medication coupled with the previously taken psychotropic medication" (which had been suspended temporarily in 2004) caused him severe physical illnesses such as "chest pains, painful, swelling and shaking hands, vomiting and coughing-up blood, blood in stool, [and]

12

fatigue, which hindered his ability to understand his legal obligations from 2004 through 2006. (Id. at 6.) According to the petition, the hepatitis treatment was terminated after eight weeks, but his physical ailments persisted.

An examination of his medical records from 2004 through 2006 indicates that Petitioner did experience chest pain, swelling in his hands and fingers, and that he was referred to cardiology for potential heart problems. (Id., Ex. D.) He also complained of blood in his stool and coughing up blood. (Id.) Later reports indicate that he was "very weak . . . possibly anemic and dehydrated" and had chronic liver disease. Several doctors also indicated that Petitioner was obese and that his problems could be a result of his weight and diet. (Id.) While Petitioner has provided evidence that he was suffering from a number of physical ailments, he provides no evidence or explanation as to how those ailments prevented him from filing a habeas corpus petition. Therefore, Petitioner's argument for equitable tolling based upon his physical ailments is without merit.

Petitioner requests an evidentiary hearing on the issue of whether he was precluded from filing his petition by reason of mental or physical impairment.

In Laws, the record contained no medical reports from the period during which the petitioner claimed to be incompetent. Laws, 351 F.3d at 923. Furthermore, the "state [had] offered no evidence at all that he was [competent] in the years when his petitions should have been filed." Id. The present case differs significantly in that the record contains periodic psychological

13

reports from April 17, 2001 until November 30, 2004, and other records relating to Petitioner's physical ailments from 2005 and 2006. (Pet'r Opp'n, Exs. B-D.) Therefore, the record is sufficiently developed for consideration, and an evidentiary hearing is unnecessary. After a careful review of the record, the Court is satisfied that Petitioner is not entitled to equitable tolling. Contrary to Petitioner's suggestion, the Court's determination is not based on resolving significant conflicts in the evidence on material issues. Cf. Roy, 455 F.3d at 955-56 (when there are only conflicting affidavits regarding the underlying facts, court must hold evidentiary hearing). The ample and largely uncontroverted facts in the record make clear that Petitioner is not entitled to the relief he seeks.

Even if it were true that Petitioner was unable to complete his petition because of his psychiatric and/or physical symptoms, it does not follow that he was also unable to enlist the help of fellow inmates in writing or filing his petition. Petitioner states that he has "always relied upon the assistance of other inmates when such assistance was available, to pursue legal endeavors." (Id. at 7.) Petitioner admits that "these legal assistants . . . made him realize and understand his legal obligations in the instant matter." (Id.) This appears to be an admission that Petitioner, rather than being mentally or physically incapacitated, was simply unaware of his legal rights and obligations between 2001 and 2006. Petitioner's alleged ignorance of the law and layman status do not amount to extraordinary circumstances. A pro se petitioner's lack of legal

14

sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling. See Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); cf. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient cause to avoid procedural bar); Cantu-Tzin v. Johnson, 162 F.3d 295, 299-300 (5th Cir. 1998) (pro se status during state habeas proceedings did not justify equitable tolling); United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993) (pro se status, illiteracy, deafness and lack of legal training not external factors excusing abuse of the writ). Therefore, Petitioner is not entitled to tolling based on his ignorance of the law.

Petitioner does not show an "extraordinary circumstance" meriting equitable tolling. See Beeler, 128 F.3d at 1289. Accordingly, the limitations period will not be equitably tolled.

CONCLUSION

The instant petition for habeas corpus was filed nearly five years after the statute of limitations expired. Because Petitioner is not entitled to statutory or equitable tolling, the statute of limitations expired on January 18, 2002. Therefore, Respondent's motion to dismiss (docket no. 6) is hereby GRANTED. The Clerk of the Court shall terminate all remaining motions, enter judgment and close the file.

This Order terminates Docket no. 6.

IT IS SO ORDERED.

DATED: 7/16/08

                                          CLAUDIA WILKEN
                                          United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

FREDERICK GATLIN,

        Plaintiff,

  v.

JAMES TILTON et al,

        Defendant.

Case Number: CV07-03696 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 16, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Frederick Gatlin P-19908
California Medical Facility
P-141-L
P.O. Box 2000
Vacaville, CA 95696-2000

Juliet B. Haley
California Attorney Generals Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Dated: July 16, 2008

                              Richard W. Wieking, Clerk
                              By: Sheilah Cahill, Deputy Clerk