FILED
08 AUG 25 PM 2:35

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FREDERICK GATLIN,            )        Case No. C-07-3696-CW-(PR)
      Petitioner,           )
                            )
v.                           )
                            )
JAMES TILTON, et.al.,        )
      Respondent.           )

---

PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

---

FREDERICK GATLIN, #P-19908
CALIFORNIA MEDICAL FACILITY
P-108
P.O. BOX 2500
VACAVILLE, CA. 95696

PRO SE PETITIONER

## TABLE OF CONTENTS

Page(s)

ARGUMENT:

I.
PETITIONER WAS DENIED A SUBSTANTIAL CONSTITUTIONAL RIGHT WHERE HE WAS DENIED A EVIDENTIARY HEARING IN ORDER TO ASEQUATELY DEVELOP THE RECORD OF HIS MENTAL AND PHYSICAL INCAPACITATION, PRIOR TO THE DISMISSAL OF HIS HABEAS PETITION AS BEING UNTIMELY ... 2

II.
PETITIONER IS DENIED A SUBSTANTIAL CONSTITUTIONAL RIGHT WHERE THE COURT FAILED TO EVALUATE HIS HABEAS PETITION UNDER THE "TOTALITY OF CIRCUMSTANCES" PRIOR TO DISMISSING IT ON PROCEDURAL GROUNDS ... 11

CONCLUSION ... 13

VERIFICATION ... 13

## TABLE OF AUTHORITIES

ALVAREZ-MACHAIN v. UNITED STATES
(9th Cir. 1997) 107 F.3d 696 ... 11

BROWN v. ROE
(9th Cir. 2002) 279 F.3d 742 ... 12

BROWN v. VASQUEZ
(9th Cir. 1991) 252 F.3d 1164 ... 12

CARO v. CALDERON
(9th Cir. 1999) 165 F.3d 1223 ... 8

CHANG v. UNITED STATES
(2nd Cir. 2001) 250 F.3d 79 ... 8

DURAN v. CASTRO
(2003) ... 4, 5

HARMELIN v. MICHIGAN
(1991) 501 U.S. 957 ... 4

KEENEY v. TAMAYO-REYES
(1992) 404 U.S. 1 ... 6, 7

LOCKYER v. ANDRADE
(2003) 538 U.S. 63 ... 3

MOORE v. MISSOURI
(1895) 159 U.S. 673 ... 6

MONGE v. CALIFORNIA
(1998) 524 U.S. 721 ... 6

**TABLE OF AUTHORITIES . . . Continued**

|  | Page(s) |
|---|---|
| MURRAY v. GIARRANTO<br>(1989) 492 U.S. 1 | 12 |
| PRICE v. JOHNSON<br>(1948) 334 U.S. 266 | 12 |
| RAMIREZ v. CASTRO<br>(9th Cir. 2004) 365 F.3d 255 | 4, 5 |
| RUMMEL v. ESTELLE<br>(1980) 445 U.S. 263 | 5 |
| SLACK v. McDANIEL<br>(2000) 529 U.S. 473 | 2, 6 |
| SMITH v. STEWART<br>(9th Cir. 2001) 241 F.3d 1191 | 7 |
| SOLEM v. HELM<br>(1983) 463 U.S. 277 | 4, 5, 6 |
| TOWNSEND v. SAIN<br>(1963) 372 U.S. 293 | 6, 7 |
| WAINWRIGHT v. SYKES<br>(1977) 433 U.S. 72 | 6 |

**TABLE OF STATUTES**

| | |
|---|---|
| 28 U.S.C. § 2244(d)(1)(a) | 2 |
| 28 U.S.C. § 2253 | 2 |
| 28 U.S.C. § 2253(c)(2) | 3 |

/
/
/
/
/
/
/

Frederick Gatlin, #P-19908
California Medical Facility/P-108
P.O. Box 2500
Vacaville, Ca. 95696

Pro Se Petitioner

FILED
08 AUG 25 PM 2: 35
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court

Northern District of California

| | |
|---|---|
| Frederick Gatlin,<br>    Petitioner,<br><br>v.<br><br>James Tilton et. al.,<br>    Respondent. | Case No. C-07-3696-CW (PR)<br><br>Petitioner's Application for Certificate of Appealability |

COMES NOW, FREDERICK GATLIN, petitioner in the above-entitled cause to move this court to grant his application for certificate of appealability.

This application is submitted for good cause and raises questions of constitution dimension that have in fact denied petitioner's substantial constitutional rights.

### Questions Presented

1. Has petitioner been denied a substantial constitutional right where his habeas petition is denied as untimely absent a evidentiary hearing to adequately develop the record of his mental and physical incapacitation?

2. Has petitioner been denied a substantial constitutional right where the court failed to evaluate his procedurally barred habeas petition under the "totality of the circumstances," in order for him to meet the "extraordinary circumstances" criteria?

(1)

<u>ARGUMENT WITH MEMORANDUM OF POINTS AND AUTHORITIES</u>

1.

<u>PETITIONER WAS DENIED A SUBSTANTIAL CONSTITUTIONAL RIGHT WHERE HE WAS DENIED A EVIDENTIARY HEARING IN ORDER TO ADEQUATELY DEVELOP THE RECORD OF HIS MENTAL AND PHYSICAL INCAPACITATION, PRIOR TO THE DISMISSAL OF HIS HABEAS PETITION AS BEING UNTIMELY</u>

It has been recently established that, when a habeas applicant seeks a certificate of appealability the court should limit its examination to threshold inquiry into the underlying merit of his claims. <u>SLACK v. McDANIEL</u> (2000) 529 U.S. 473, 481. This inquiry does not require full consideration of the factual or legal bases supporting the claims. Consistent with U.S. Supreme Court precedent and statutory text, the applicant need demonstrate "a substantial showing of a constitutional right." <u>28 U.S.C.</u> § 2253(c)(2). The applicant satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his case or that the issues presented were adequate to deserve encouragement to proceed further. (Id., at p. 484). He need not convince a judge, or, for that matter, three judges that he will prevail, but must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

However, in this case, the district court did not decide the case on the merits and dismissed the case because it found that the case was time-barred pursuant to <u>28 U.S.C.</u> § 2244(d)(1)(a). The district court's ruling was entirely procedural.

Thus, the U.S. Supreme Court has recently found that "Congress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights on appeal." <u>SLACk v. McDANIEL</u>, supra, 529 U.S. at p. 483. In order to protect habeas cases which were dismissed on procedural grounds the U.S. Supreme Court has outlined the requirements

(2)

to earn a certificate of appealability: "When a district court denies a habeas petition on procedural grounds without without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that;

    a.  jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that;
    b.  jurists of reason would find it debatable whether the district court was correct in it's procedural ruling." (Id. at p. 484).

Therefore, determining whether a certificate of appealability should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding. Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal. (Id. at pp. 484-485).

In the instant case, petitioner seeks a certificate of appealability that meets both of the aforementioned requirements.

To begin with, petitioner raised, inter alia;

"3-STRIKES LAW IS UN-CONSTITUTIONAL DUE TO CRUEL & UNUSUAL PUNISHMENT VIOLATIONS AS APPLIED TO PETITIONER . . ." (Fed. Ptn., at p. 6(m), Ground 3).

It has been clearly established that, a sentence that is "grossly disproportionate" to the crime committed violates the Eighth Amendment prohibition against cruel and unusual punishment. <u>LOCKYEAR v. ANDRADE</u> (2003) 538 U.S. 63. Moreover, the U.S. Supreme court has clearly established the fact that, the deference to be paid to state recidivism policies in Eighth Amendment cases is not unlimited and that, in certain "exceedingly rare" and "extreme cases," sentences validly imposed under state statutes reflecting the state's recidivism may still violate the Eighth Amendment.

(3)

SOLEM v. HELM (1983) 463 U.S. 277, 490; HARMELIN v. MICHIGAN (1991) 501 U.S. 957, 1001.

There is no doubt that petitioner's extreme sentence raises an inference of disproportionality when compared to his most recent offense--driving a vehicle without the owner's consent--and criminal history, which consist of; (1) Two armed robberies committed during a single criminal transaction, (2) burglary, (3) resisting arrest, bank robbery and (4) possession of a controlled substance.

Recently, the Court of Appeals for the Ninth Circuit reasoned that despite the actual offense committed, it is the conduct during the commission of the offense that must be considered. RAMIREZ v. CASTRO (9th Cir. 2004). 365 F.3d 755,767 (looking past the definitions of the crimes of which Ramirez was convicted to determine whether Ramirez' conduct involved violence or was particularly serious).

In the instant case, there is absolutely nothing in the record to even infer the act of, or the threat of, violence in the commission of driving a vehicle without the owner's consent.

As for petitioner's prior convictions, alleged as strikes, there is no dispute that he did suffer two robberies, while armed with a handgun, his criminal history is not much different than other cases found to violate the Eighth Amendment of the United States Constitution. For instance, in DURAN v. CASTRO (2003) the defendant was charged with attempting to shoplift a belt and a pair of socks worth a total of $26.99, and possession of 1.55 grams of heroin and a syringe. Duran pled guilty to the heroin possession in exchange for the dismissal of the petty theft w/prior theft offense. Under the terms of the agreement, Duran admitted that he had suffered two prior serious felonies--two 1989 kidnapping convictions stemming from a single incident where, upon being refused a ride by a woman, he

grabbed her seven-year-old son and told the woman to do as he said or he would hurt the boy. He was subsequently sentenced to a prison term of 25 years to life under the Three Strikes law. (See Exhibit A).

During a collateral habeas petition review, the United States District Court, for the Eastern District, the Honorable Lawrence K. Karlton, presiding found that <u>Duran's</u> sentence under the state's Three Strikes law violated the prohibitions of the Eighth Amendment of the United States Constitution.(Id.)

It is petitioner's position, in the instant case, that jurist of reason could apply the same reasoning, employed by the <u>Duran</u> court, to find that the nature of petitioner's offense (driving a vehicle w/out the owner's consent) "contrasts starkly with the severity of the punishment . . . [T]aking into account the "harm caused or threatened to the victim or society, and the culpability of the offender." <u>SOLEM v. HELM</u> (1983) 463 U.S. 277, it is clear that, while simply driving a vehicle without the owner's consent **can** constitute a misdemeanor or felony in California, it lacks the earmarks of a serious felony.

In addition, the <u>Duran</u> court evaluated his prior convictions under the doctrine of Double Jeopardy. (Id.) Thus, jurists of reason could employ such reasoning in the instant case and find that "[R]egardless of the relationship between the principal offense and prior convictions, those priors can only serve to enhance the punishment for the principal offense to the degree that such offense is susceptible to aggravation." Put differently, some minor offenses will never warrant severe punishment even at there most aggravated. <u>RUMMEL v. ESTELLE</u> (1980) 445 U.S. 263, 274 n.11.(life sentence for hypothetical overtime parking violation would be disproportionate). Thus, when punishment greatly exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offenses. (Exhibit A, p. 12832).

Also, reasonable jurists could debate as to whether or not, due to prohibition on double jeopardy, recidivism may only be constitutionally considered in

sentencing to the extent that it aggravates the current offense. This rule has been established for more than a century, see, e.g., MOORE v. MISSOURI (1895) 159 U.S. 673, 677, and has been reiterated in the Supreme Court's contemporary jurisprudence concerning gross disproportionality challenges. See SOLEM v. HELM, supra 463 U.S. at p. 296 n.21. If that were not enough, the Supreme Court applied this rule to determine whether a sentence imposed under the very same recidivist statute operating in this case constituted double jeopardy. MONGE v. CALIFORNIA (1998) 524 U.S. 721, 729.

Under the foregoing circumstances, there can be no dispute that, reasonable jurists would find it debatable whether or not the instant petition states a valid claim of the denial of a constitutional right, which satisfies the first prong established by the requirements of SLACK v. McDANIEL, supra, 529 U.S. at p. 484.

In demonstrating the second prong, petitioner contends that he was entitled to a evidentiary hearing prior to having his habeas corpus petition dismissed on procedural grounds.

the habeas corpus statute, rules and case law have long made ample provision for holding of evidentiary hearings on fact-based claims. Ever since Congress passed the Federal Habeas Corpus Act of 1867, federal courts have had the authority and responsibility to "hear and determine the facts and dispose of the matter as law and justice require." See TOWNSEND v. SAIN (1963) 372 U.S. 293, 311. In 1948 and 1966, Congress enacted statutes that codified a petitioner's right to receive, and the district courts even broader discretion to hold, a hearing . WAINWROGHT v. SYKES (1977) 433 U.S. 72, 87 (petitioner is entitled to have the federal habeas corpus court make its own independent determination of his federal claim, without being bound by the determinantion on the merits of that claim reached in state court proceedings.")

In 1992 and 1996, however, the The U.S. Supreme Court and then Congress tempered somewhat their emphatic endorsement of habeas corpus hearings. In its closely divided 1992 decision in KEENEY v. TAMAYO-REYES 504 U,S. 1, the court limited man-

datory (but not discretionary) hearings to facts that were not previously the subject of a full and full hearing in the state courts for reasons beyond the control of the habeas corpus petitioner or his attorney. In so doing, the Tamayo-Reyes court overturned a passage in Townsend that had required federal hearings on all material facts not addressed in the state court unless the prisoner himself had "deliberately bypassed" (i.e., personally, knowingly and intelligently had waived) a state court hearing on the issue, TOWNSEND v. SAIN, supra, 372 U.S. at 317.

In 1996, Congress enacted the Antiterrorism and Death Penalty Act (AEDPA), Pub.L. 104-132, 110 Stat. 1214 (1996) AEDPA, alters habeas corpus procedures in a number of important respects, including by narrowing yet further the right to an evidentiary hearing in the situation the court previously had addressed in Tamayo-Reyes. Under AEDPA, a petitioner who is to blame for failing to develop the facts in state court may not do so by evidentiary hearing in federal court unless the petitioner satifies the statute's stringent "cause" and "innocence" standards. Even after AEDPA, Townsend's mandatory hearing standards - and its delegation to district courts of broad discretion to hold evidentiary hearings that are not mandated - continues to govern all situations save those in which the petitioner's procedural default accounts for the state court's failure to develop the material facts.

Under the statutes rules, and caselaw discussed above, federal habeas corpus hearings are required if three conditions are met - (1) the petition alleges facts that, if proved, entitle petitioner to relief, SMITH v. STEWART (9th Cir. 2001) 241 F.3d 1191, 1197-98 (". . . a habeas petitioner who asserts a colorable claim to relief, and who has never been given the opportunity to develop a factual record on that claim, is entitled to a evidentiary hearing in federal court"), (2) the fact based claims survive summary dismissal because their factual allegations are not palpably incredible or

patently frivolous or false - the standard for summary dismissal in habeas corpus proceedings, Accord CHANG V. UNITED STATES (2nd Cir. 2001) 250 F.3d 79, 85 (district court erred in denying hearing on claim which, while "improbable . . .is not so clearly bereft of merit as to be subject to dismissal on its face"), (3) for reasons beyond the control of the petitioner and his attorney (assuming his attorney rendered constitutionally satisfactory assistance), the factual claims were not previously the subject of a full and fair hearing in the state courts or, if a full and fair state court hearing was held, it did not result in state court factfindings that resolve all the controlling factual issues in the case. CARO v. CALDERON (9th Cir. 1999) 165 F.3d 1223, 1228-29 (district court's ruling denying evidentiary hearing on ineffective assistance of counsel claim is reversed because, "despite [petitioner's] efforts to obtain an evidentiary hearing on this issue, neither the district court or the state courts have reliably found the facts relevant to the claim").

In the instant case, petitioner's habeas corpus was dismissed as procedurally barred and the district court found that he was not entitled to an evidentiary hearing based primarily on three (3) psychiatric evaluations, amongst numerous such reports, as well as the court's interpretation that petitioner (himself) aurthored his legal pleadings

As noted by the district court, petitioner has submitted psychiatric documentation from April 21, 2001 through November 30, 2004. However, the court relies upon two of those documents to conclude that petitioner is not entitled to equitable tolling due to his mental condition. In one such report, the court note's that:

> "In March 2003, his condition seems to have improved
> Markedly, According to the progress note, Petitioner
> was allowed to have a cell mate again, his level of
> [mental health] program participation had been recently
> reduced, he sounded rational and coherent, and he denied

1     experiencing any issues." (Court's Order, p. 11)

2   Petitioner submits to this court, that what is missing is the fact that this
3 same psychiatric report also reads, in relevant part;

4     ". . . I/M should be considered for DMH referral . . ."

5   This portion of the report is significant because a referral to DMH (Depart-
6 ment of Mental Health) is for those inmates who have mental problems that substan-
7 tially surpasses problems suffer by those who are considered EOP (Enhanced Out
8 Patient) and belies the court's conclusion that petitioner's condition had improved
9 "markedly." Moreover, the report states, in relevant part;

10     ". . . I/M should be considered for CCCMS status
11     in-the-not-distant future . . ."

12   This report reasonably suggest that petitioner's condition has not neces-
13 sarily improved, where they indicate he is in need of a higher degree of mental
14 health status and recommends the lower status sometime in the future.

15   As for the psychiatric report of November 30, 2004, it merely indicates that
16 "He appears marginal with slight improvement in his structure EOP setting."

17   These reports in no way suggest that petitioner was mentally competent and
18 able to prepare and file a habeas corpus petition. In fact all such reports show
19 that petitioner suffered from hallucinations, delusions, paranoia, unusual thoughts,
20 and supiciousness. Thus, even had petitioner, at all times, taken his medication
21 to help cope with these conditions, it does not mean that petitioner was left in
22 a mental state where he was capable of preparing and/or filing his habeas corpus
23 petition. Petitioner's condition was such where he suffered from some form of
24 mental instability on a daily basis, especially hallucinations of evils spirits and
25 demons as well as unusal thought patterns. It would be virtually impossible for
26 petitioner to prepare a writ of habes corpus under such mental circumstances.

27   Moreover, it does not defy logic for such conditions would preclude petitioner
28 from not being able to know, or understand his legal obligations relating to the

timeliness of his habeas petition. Under such circumstances, petitioner had no inclination to seek out other inmates to assist in legal matters that he did not understand to exist. Also, during much of this period, while on EOP status, petitioner was housed separately from General Population, and was housed amongst nothing but other EOP inmates who were in the same and/or worse mental condition than himself. It was not until he was released to the general population and going to his religious service that other inmates, concerned about his well being, began to inquire about his health as well as his case.

Contrary to the court's belief, petitioner has prepared none of the pleadings submitted to this court. (See Exhibit B), which was prepared by the same inmate that prepared the state habeas petitions. Yet, it was another inmate that has, thus far, prepared the opposition filed by this court, as well as the instant certificate of appealability. (See sworn declaration of Dwight Martin).

In submitting his mental health records, only those documents that were made available by the prison's records dept. and which which could be understood, by the inmate assistant, were made available to the court. (See sworn declaration of Dwight Martin).

Thus, petitioner should not have been denied a evidentiary hearing based upon a misinterpretation, by the court, of petitioner's condition and the failure of his inmate assistants to fully develop the record as they are layman at law and working with very limited resources while lacking in knowledge of matters relating to mental health issues.

For the foregoing reasons, the dismissal of petitioner's habeas corpus absent an evidentiary hearing should be reversed.

In addition, the district court has summarily dismissed petitioner's habeas petition, on procedural grounds, where said court determined;

> "While petitioner has provided evidence that he was suffering from a number of physical ailments, he provides no evidence or explanation as to how those ailments prevented him from filing a habeas corpu petition. Therefore, petitioner's argument for equitable

(10)

tolling based upon his physical ailments is without merit." (Court's Order, p. 13).

In his opposition, petitioner clearly stated, in relevant part;

> ". . . the hepatitis medication coupled with the previously taken psychotropic medications had somewhat taken their toll, as petitioner began suffering from numerous debilitating illnesses, i.e., chest pains, painful and swelling shaking hands, vomiting and coughing up blood, blood in stool, fatigue . . ." (Petitioner's Opposition, p. 6).

While suffering these conditions, petitioner's mindset could not focus on matters other than what it would take for him to get over his illnesses. It is for this reason petitioner states that his physical conditions "effectively hindered and/or prohibited his ability to acknowledge or understand his legal obligations pursuant to the AEDPA." In addition, petitioner, indicates " . . . even had petitioner been able to acknowledge and understand said obligations, his medical concerns combined with his mental illness precluded his ability to perform such obligations." (Id. p. 13-14).

For the reasons set forth above, petitioner's habeas petition should not have been dismissed absent an evidentiary hearing so as to fully develop the record as to the full extent of petitioner's mental and physical incapacitation.

II.

PETITIONER IS DENIED A SUBSTANTIAL CONSTITUTIONAL RIGHT WHERE THE COURT FAILED TO EVALUATE HIE HABEAS PETITION UNDER THE "TOTALITY OF CIRCUMSTANCES" PRIOR TO DISMISSING IT ON PROCEDURAL GROUNDS.

Although, it was not addressed by the court, prior to summarily dismissing petitioner's habeas corpus on procedural grounds, petitioner clearly argued that "extraordinary circumstances," in his particular situation could be found under the "totality of circumstances" test, which would also allow equitable tolling. ALVAREZ-MACHAIN v. UNITED STATES (9th Cir. 1997) 107 F.3d 696, 701.

Also, as stated in his opposition, relating to the "totality of circumstances,

(11)

> "In recognition of the fact that pro se habeas petitioners occupy a unique position in the law, (Price v. Johnson (1948) 334 U.S. 266, 292), the 9th Circuit Court of Appeals has concluded it would be an abuse of discretion for a district court to refuse to consider a petitioner's equitable tolling claim where the petitioner was (1) illiterate, (2) representing himself, (3) "making a relatively novel claim under a relatively novel statute." BROWN v. ROE (9th Cir. 2002) 279 F.3d 742, 745.

In addition, the 9th Circuit Court of Appeals has also recognized, as so often happens;

> "Petitioner is often illiterate or poorly educated and yet must decipher a complex maze of jurisprudence in order to determine which of his constitutional rights, if any, may have been violated. Such a task is 'difficult even for a trained lawyer to master,' and, understandably is often beyond the abilities of most prisoners. (Citations omitted.) It is thus not surprising that when a prisoner attempts to prepare his own [ . . . ] petition without the assistance of counsel, the product of his efforts is often confusing and incomprehensible amalgam of claims which not only fails to protect the prisoner, but which ties up valuble court time in the inevitable struggle to comprehend what is being alleged." BROWN v. VASQUEZ (9th Cir. 1991) 252 F.2d 1164 citing MURRAY V. GIARRANTO (1989) 492 U.S. 1, 28 (Stevens, J., dissenting).

Though not illiterate, petitioner is poorly educated, via other inmates he is representing himself, suffering from numerous physical and mental ailments, and "making a relatively novel claim under a relatively novel statute."

It would appear, that the district court would prefer petitioner submit a useless petition, as described by the Vasquez court, for nothing more than to meet a statutory dead line.

However, as previously concluded by the 9th Circuit, it was an abuse of discretion for the district court to refuse to consider the aforementioned factors under the "totality of circumstances" test prior to dismissing his habeas corpus petition as procedurally barred. BROWN v. ROE, supra, 279 F.2d at p. 745. Because, "extraordinary circumstances" can be found from a

combination of several factors. <u>HELTON v. SECRETARY FOR THE DEPARTMENT OF CORRECTIONS</u> (11th Cir. 2000) 233 F.3d 1322, 1325-26.

### CONCLUSION

Petitioner has clearly demonstrated that reasonable jurists would find it debatable as to whether he has been denied a substantial constitutional, and whether the district court was correct in its procedural ruling.

Moreover, petitioner has demonstrated that he was entitled to an evidentiary hearing prior to the dismissal of his habeas petition on procedural grounds.

WHEREFORE, the judgement of the district must be reversed and the matter remanded back to said court for further proceedings.

### VERIFICATION

I, the undersigned, swear under the penalty of perjury and the laws of the state of California that the foregoing is true to the best of my own personal knowledge.

Executed on this 13TH day of <u>August</u> 2008 at <u>Vacaville</u>, California.
I, the undersigned, swear under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

/S/ _____
Frederick Gatlin/Pro Se Petitioner

(13)

**SWORN DECLARATION OF DWIGHT MARTIN**

### SWORN DECLARATION OF DWIGHT MARTIN IN SUPPORT OF FREDERICK GATLIN'S CERTIFICAT OF APPEALABILITY APPLICATION

In the undersigned, under the penalty of perjury and the laws of the State of California hereby state and declare:

1. I am the declarant in the above-entitled cause, and not a party thereto, I am over the age of eighteen years, a citizen of the United States and currently confined at California Medical Facility located at Vacaville, California.

2. I am the inmate who prepared the Opposition to Respondent's Motion to dismiss that was filed by this court on December 31, 2007. Because another inmate, not Mr. Gatlin, asked me to review and give my opinion regarding the opposition at the attached exhibit B.

3. After giving a negative opinion of the attached exhibit (opposition), I was then introduced to Mr. Gatlin, who appeared sort of dazed and partially incoherent as he asked if I could assist him in his legal matters. More specifically he asked if the opposition at exhibit B was adequate for presenting to the court, and if not, what would have to be done to improve it?

4. On page 8, of the declaration attached with exhibit B an inmate by the name of Raymond Jackson Sr. states under the penalty of perjury that he is the author of exhibit B. In reviewing all pleadings prior to said opposition, I could easily ascertan that he prepared those as well, and that there was nothing actually prepared by Mr. Gatlin, himself.

5. The inmate that first came to me about Mr. Gatlin's legal matters, all I can remember about him is that he was a Muslim, with an Arabic name, who has since transferred or paroled.

6. Also, at the time of being introduced to Mr. Gatlin, and preparing his motion for extension of time, as well as the opposition, I was in a great deal of physical pain, myself, from lumbar and cervical spine disorders. For which I've under gone numerous steroid injections and currently taking narcotic pain killers.

6. As a result of my own physical pain, it was not possible for me to give my undivided attention and/or focus on what needed to be done in preparing Mr. Gatlin's opposition as I wanted to get it over with as quickly as I could

7. As a result of my own physical pain, it was extremely difficult deciphering much of what Mr. Gatlin was trying to convey, while explaining his case factors, because he mostly spoke in long drawn-out abstract terms which at times did not make much sense.

(1)

SWORN DECLARATION OF DWIGHT MARTIN . . . Continued

8. As a result of my own physical pain, I was not able to personally review all of Mr. Gatlin's medical records, as they were too voluminous, and he is still in possession of such records that have not been reviewed.

9. I am a layman at law, and not aware of all that is required to obtain an evidentiary hearing in a case such as Mr. gatlin's. I only knew that the opposition that he was in the process of presenting was not appropriate, for his situation, and only gave the assistance that I was able to provide while suffering in great pain myself.

10. Most of the inmates at this facility suffer some form of mental or physical impairment and most are unwilling or incapable of rendering legal assistance.

For the reasons stated herein, Mr. Gatlin should not be held accountable for failing to provide something that was beyond his capability, where considering his mental and physical impairments, he had to rely on others to make his legal decisions as well as prepare all pleadings.

If asked to do so, I am willing to truthfully and competently testify before any judicial inquiry and/or tribunal regarding the factual issues presented herein.

Dated: _August 13_, 2008

### VERIFICATION

I, the undersigned, swear under the penalty of perjury and the laws of the State of California that the foregoing is true and correct to the best of my own personal knowledge.

Executed on this _13th_ day of _August_, 2008 at _Vacaville_, California.
I, the undersigned, swear under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

/S/ _Dwight Martin_
Dwight Martin, #J-16019/Declarant

(2)