**United States District Court**
For the Northern District of California

1

2                    IN THE UNITED STATES DISTRICT COURT

3                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

4  FREDERICK GATLIN,              )  No. C 07-3696 CW (PR)
                                  )
5            Petitioner,          )  ORDER REVIEWING COMPLETE MEDICAL
                                  )  RECORD; FINDING NO EVIDENTIARY
6       v.                        )  HEARING WARRANTED; DENYING
                                  )  RESPONDENT'S MOTION TO DISMISS;
7  JAMES TILTON,                  )  AND SETTING BRIEFING SCHEDULE
                                  )
8            Respondent.          )
   _____)
9

10                              INTRODUCTION

11        Petitioner Frederick Gatlin, a state prisoner, filed a pro se

12  petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

13        Respondent filed a motion to dismiss, claiming that

14  Petitioner had failed to file his petition within the statute of

15  limitations.  Petitioner responded by arguing that he was entitled

16  to equitable tolling from 2001 through 2006 because his mental and

17  physical illness during that five-year period prevented him from

18  filing a timely petition.

19        On July 16, 2008, after reviewing the evidence and

20  determining that Petitioner did not show an extraordinary

21  circumstance meriting equitable tolling, the Court granted

22  Respondent's motion to dismiss the petition as untimely.

23        Petitioner timely appealed and, on May 6, 2010, the Ninth

24  Circuit issued an Order vacating the Court's July 16, 2008 Order

25  and remanding for further proceedings.  The Ninth Circuit ruled

26  that the medical records Petitioner submitted made a colorable

27  showing that he suffered from a serious mental illness for at

28  least a substantial portion of the five-year period at issue.

However, the court noted that, because Petitioner proceeded pro
se, the record contained only intermittent medical records making
it difficult to gain a complete understanding of his mental
health.  The Ninth Circuit ordered that this Court examine
Petitioner's entire medical record during the relevant five-year
period to determine the extent of his mental capacity.  It held
that if the records suggest that Petitioner's mental illness
"affected his ability to file a habeas petition during the entire
relevant period of his incarceration, an evidentiary hearing would
be warranted."  (May 6, 2010 Ninth Circuit Order at 3.)

On May 28, 2010, the Ninth Circuit issued its mandate.

In an Order dated June 11, 2010, the Court directed
Respondent to lodge with the Court the entirety of Petitioner's
prison medical records.

On June 14, 2010, Respondent submitted Petitioner's medical
records for the Court's review.

The Court reviewed Petitioner's mental health but also his
physical health during the five-year period because:
(1) Petitioner claims both circumstances prevented him from filing
his habeas petition at different intervals during the relevant
five-year period; (2) Petitioner's complete medical record
contains information relevant to both his mental and physical
ability to diligently pursue his claims; and (3) as described
below, his mental and physical problems are interrelated and their
effects on his ability to file a habeas petition are inseparable.

Having considered the complete medical record, the Court
finds an evidentiary hearing is not necessary because the record

is now sufficiently developed to show that Petitioner is entitled to equitable tolling during the relevant five-year period. Because the Ninth Circuit has vacated the Court's July 16, 2008 Order, the Court now DENIES Respondent's motion to dismiss.

DISCUSSION

I.   Background

In its July 16, 2008 Order, the Court found that the petition was untimely unless Petitioner could show that he was entitled to tolling, stating:

> In the present case, the judgment became final for purposes of the statute of limitations on January 19, 2001 because Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court within ninety days.
>
> Accordingly, Petitioner was required to file a federal habeas corpus petition no later than January 18, 2002.  Because he did not file the present petition until July 18, 2007 -- more than five years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

(July 16, 2008 Order at 3-4.)

The Court found that Petitioner was not entitled to statutory tolling of the limitations period because the state petition filed on September 28, 2006 did not revive a limitations period that had already expired on January 18, 2002.  (Id. at 5 (citing Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003)).)

The Court then turned to Petitioner's claim for equitable tolling and analyzed it based on the limited medical record he submitted:

> Petitioner's first argument for equitable tolling is based on his mental illness.  He contends that, after he was sentenced and incarcerated, his psychological condition became much worse than it had

3

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

been and prevented him from filing a habeas corpus petition.

He also claims that "from 2001 until 2004, he was under numerous psychotropic medications . . . due to his suffering from hallucinations and delusions that affected his ability to sleep, eat and/or rational thought patterns."  He suggests that these "numerous psychotropic medications" also contributed to his inability to file his petition.

In 2004, Petitioner's psychotropic medication was discontinued for eight weeks so that he could be treated for Hepatitis C.  He argues that the residual effects of his psychological medication, coupled with the new hepatitis medication, "could have" resulted in the onset of "serious medical problems . . . . which effectively hindered and/or prohibited his ability [to] acknowledge and understand his legal obligations pursuant to the AEDPA" from 2004 through 2006.

In sum, Petitioner claims he is entitled to equitable tolling because he suffered from mental illnesses, medication-related impairments, and physical ailments during the time period in which he should have filed his state and then federal habeas petitions from January 19, 2001 to September 28, 2006.

(July 16, 2008 Order at 8-9 (citations omitted).)

II.   Equitable Tolling Analysis Based on Limited Medical Record

The Court determined, based on the limited record, that Petitioner's claims were insufficient to establish an extraordinary circumstance entitling him to equitable tolling. First, it noted that most mental illness is treatable, allowing sufferers to manage their own affairs.  (<u>Id.</u> at 9.)  It also quoted the psychiatric evaluation performed prior to completion of Petitioner's trial, which concluded that he "has a relatively sustained psychotic thought process, but it does not manifest itself in florid and sustained auditory hallucinations or delusions." (<u>Id.</u> at 10.)  The Court found that, although Petitioner was periodically given a single cell because of his

4

psychiatric instability, the medical records presented stated that in June, 2002 he was having "not much problem psychiatrically" and in March, 2003 he was "rational and coherent." (Id. at 10-11.) This evidence rebutted Petitioner's claim that his condition had worsened after his psychiatric evaluation for trial and prevented him from filing his habeas petition from 2001 to 2004.

The Court also noted that, according to some medical reports on record, there were periods where he was not taking prescribed medication, even though the same reports affirmed that there was "NO evidence of any side effects" from his medication. (Id. at 11-12 (quoting Pet'r Opp'n, Ex. B).) On these facts, the Court found that it was illogical to suggest that Petitioner's medication prevented him from filing his petition. (Id. at 12.)

Similarly, the Court was unpersuaded by the evidence Petitioner offered to support his claim that he was unable to file his petition between 2004 and 2006 because of his physical ailments. These medical problems included chest pain, heart problems, swelling of his hands and fingers, chronic liver disease, obesity, gastrointestinal bleeding, and general weakness. (Id. at 13.) The medical records provided by Petitioner suggested that his medical issues could have been the result of his weight and diet. (Id.) The Court concluded that Petitioner had not shown how his physical problems had prevented him pursuing his claims.

Finally, the Court observed that Petitioner had "failed to provide any evidence detailing how or at what point his condition improved" to explain why he was now able to pursue his habeas claims diligently. (Id. at 12.) Therefore, the Court found

**United States District Court**
For the Northern District of California

unavailing Petitioner's arguments for equitable tolling based upon his mental illness, the effects of his psychotropic medication, and his physical ailments.

In its May 6, 2010 Order, the Ninth Circuit cited <u>Laws v. Lamarque</u>, 351 F.3d 919, 922-24 (9th Cir. 2003), and stated that, in the present case, Petitioner "was required to make an initial showing that he suffered from a mental illness severe enough to warrant equitable tolling." (May 6, 2010 Ninth Circuit Order at 2.) According to <u>Laws</u>, a district court must take care not to deny a motion for equitable tolling before a sufficient record can be developed. <u>See</u> 351 F.3d at 924. The court may only dismiss a claim if there is a sufficiently developed record containing "countervailing evidence" that rebuts a petitioner's claim. <u>Id.</u> Here, although some evidence submitted by Petitioner countered his claims of equitable tolling, the record was incomplete. Therefore, as mentioned above, the Ninth Circuit remanded the case to allow this Court to review the complete medical record and to determine if an evidentiary hearing is warranted. (May 6, 2010 Ninth Circuit Order at 2-3.)

III. Equitable Tolling Analysis Based on the Complete Medical Record

The complete medical record shows that Petitioner had hallucinations and delusions throughout the period between 2001 and 2005. The psychotropic medications he was prescribed did not appear either to control these psychiatric symptoms or to exacerbate them. The 2001 Mental Health History and Evaluation indicates that Petitioner was delusional, "religiously preoccupied" and experiencing visual hallucinations. (Pet'r

United States District Court
For the Northern District of California

Medical R. (PMR) 3 of 5, Mental Health History and Evaluation Apr. 17, 2001 at 2-3.)  The February, 2002 psychological evaluation assessed Petitioner as "psychotic" and ordered both an increase in his medication and placement into a single cell.  (PMR 5 of 5, Progress Note (Prog. Note) Feb. 26, 2002 at 2-3.)  Although the June, 2002 progress notes stated that Petitioner was having "not much problem psychiatrically," they also stated that his visual hallucinations continued.  (PMR 5 of 5, Prog. Notes June 5, 2002, June 25, 2002.)  The July 9, 2002 progress note reported that Petitioner described these visions as "angels and demons; bunch of shadow people on the wall dancing and having sex."  (PMR 5 of 5, Prog. Note July 9, 2002.)  He was again placed into a single cell in October, 2002.  (Pet'r Opp'n, Ex. B at 7.)

Despite periods where Petitioner refused to take his medication because of the medical side effects -- "urinating on self and swelling" -- the 2002 progress notes described him as "a full program participant" in the prison outpatient mental health care system.  (PMR 4 of 5, Prog. Note Nov. 26, 2002; PMR 5 of 5, Prog. Notes May 13, 2002, June 18, 2002, June 25, 2002.)  The hallucinations persisted whether "on meds or off of them."  (PMR 5 of 5, Prog. Note June 25, 2002.)  Petitioner's progress notes in January, 2003 stated that his condition "remained the same," his psychiatric symptoms were "ongoing" and he continued to believe that he was a "deity."  (PMR 4 of 5, Prog. Notes Jan. 7, 2003, Jan. 15, 2003, Jan. 28, 2003.)

In March, 2003, Petitioner was allowed to have a cell mate again and denied experiencing "any current issues," though he still reported some "visions."  (PMR 4 of 5, Prog. Notes Mar. 4,

7

United States District Court
For the Northern District of California

2003, Mar. 19, 2003, Mar. 25, 2003.)  He was transferred from the Enhanced Outpatient Program (EOP), the most intensive level of care in the prison outpatient mental health care system, onto the Clinical Case Management System (CCCMS), a reduced level of care. (PMR 4 of 5, Prog. Note Mar. 21, 2003.)  However a July, 2003 progress note reported that Petitioner was having visions of demons.  (PMR 4 of 5, Prog. Note July 21, 2003.)  He reported having similar visions in the November, 2003 and December, 2003 progress notes and in his 2004 Mental Health Evaluation and Treatment Plan.  (PMR 4 of 5, Prog. Notes Nov. 14, 2003, Dec. 15, 2003; Mental Health Evaluation and Treatment Plan (MHETP), Apr. 15, 2004 at 3.)  In November, 2004, Petitioner was again placed on EOP because "he was not doing well on CCCMS." (PMR 4 of 5, Prog. Note Nov. 30, 2004.)  He remained on EOP and continued to have delusions and hallucinations through June, 2005.  (PMR 4 of 5, MHETPs Feb. 15, 2005, May 10, 2005; Prog. Note June 13, 2005.)

Petitioner's progress note from June 9, 2005 states that he was "stable on no psych. med." (PMR 4 of 5, Prog. Note June 9, 2005.)  However, the complete medical record shows that Petitioner's physical ailments limited the treatment of his mental illness and directly affected his ability to file a habeas petition from 2005 to 2006.  An August, 2005 progress note concludes that "File documentation confirms that I/P has erosion of the GI track [sic], lending support to I/P's decision to not receive psych. medication." (PMR 4 of 5, Prog. Note Aug. 3, 2005 (emphasis in original).)  Petitioner had previously reported coughing up blood.  (Pet'r Opp'n, Ex. D at 11.)  In 2005, after a

United States District Court
For the Northern District of California

liver biopsy, medical staff treated Petitioner's hepatitis C infection with interferon. (PMR 3 of 5, Health Record Report, Jan. 3, 2005; PMR 4 of 5, Prog. Notes Dec. 2, 2004, Mar. 14, 2005, Aug. 2, 2005.) Petitioner's interferon treatment began in June, 2005.[1] (PMR 4 of 5, Prog. Note June 13, 2005.) Initially his hallucinations decreased, but the interferon treatment eventually led to depression -- a known side effect -- and was discontinued by the end of September, 2005 due to medical complications. (PMR 4 of 5, Prog. Notes July 5, 2005, July, 13, 2005, Sept. 7, 2005; MHETP Aug. 8, 2005.) Because the interferon treatment caused severe nausea and vomiting, he was placed on a full liquid diet for nine months from July, 2005 until April, 2006.[2] (PMR 3 of 5, CMF Outpatient Dietary Referral Forms July 5, 2005, Oct. 31, 2005.) Petitioner's medical reports indicate that during this period he was "very weak . . . possibly anemic and dehydrated" and had chronic liver disease and seizures. (Pet'r Opp'n, Ex. D at 13; PMR 4 of 5, Prog. Note Dec. 30, 2005.) Petitioner's depression, in conjunction with his rheumatoid arthritis and heart

---

[1] Petitioner mistakenly claimed in his opposition to the motion to dismiss that he received interferon in 2004. His complete medical records show that the treatment occurred in 2005.

[2] Petitioner's medical records contain a note that a member of the medical staff did not believe Petitioner should remain on a full liquid diet after November 1, 2005. (PMR 3 of 5, CMF Outpatient Dietary Referral Form Oct. 31, 2005.) But there is no record that a normal diet was prescribed at that time; therefore, the Court assumes that Petitioner remained on a full liquid diet until the medical order expired on April 30, 2006. Even if Petitioner had resumed a normal diet and this change in diet was sufficient evidence of his physical well-being to preclude equitable tolling for the period after November 1, 2005, his petition would still be timely, as calculated below.

United States District Court
For the Northern District of California

problems may also have led to his fatigue and weakness.  (PMR 4 of 5, Prog. Note June 23, 2006.)  While there is no evidence to support Petitioner's claim that psychotropic medications contributed to his physical ailments, it is clear that the severity of his medical problems during this time period would impose a grave difficulty on a prisoner attempting to file a habeas petition.

It was not until June 16, 2006 that a medical report classified Petitioner as "clinically stable."  (PMR 3 of 5, Physician Request for Services June 16, 2006.)  Despite some lingering mental and physical issues, Petitioner was able to file his state habeas petition about three months later, on September 28, 2006.  The medical records show that discontinuation of interferon treatment and amelioration of its effects reversed the extraordinary circumstances that had previously prevented him from diligently pursuing his claim.

After carefully reviewing Petitioner's complete medical record as summarized above, the Court finds that an evidentiary hearing is not necessary.  In Laws, the record contained no medical reports from the period during which the petitioner claimed to be incompetent.  See 351 F.3d at 923.  Here, the record is sufficiently developed for consideration because it now includes Petitioner's complete medical record.  Petitioner suffered severe mental illness, that could not be controlled with treatment from 2001 to 2005, and acute, incapacitating physical ailments from 2005 to 2006.  These conditions are extraordinary circumstances beyond Petitioner's control which justify equitable tolling.  See Calderon v. United States District Court (Beeler),

10

**United States District Court**
For the Northern District of California

128 F.3d 1283, 1288 (9th Cir. 1997) (citation and internal quotation marks omitted) (extensions of time should be granted only if "'extraordinary circumstances' beyond [a] prisoner's control make it impossible to file a petition on time").  Even if Petitioner had periods of lucidity intermingled with his hallucinations and the fatigue and pain induced by his debilitating physical conditions, the Court cannot identify such intervals that, when pieced together, could amount to a year in which he was able to pursue his habeas petition diligently. Petitioner shows grave difficulty that merges literally into impossibility.  See Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002) ("the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor"). Accordingly, Petitioner is entitled to equitable tolling during the time period the complete medical record shows he suffered from mental and physical illness from 2001 through 2006 because these extraordinary circumstances made it impossible for him to file a timely petition.

        In sum, the limitations period started to run on January 19, 2001.  As mentioned above, the limitations period is equitably tolled from January 19, 2001 through June 16, 2006 during the time Plaintiff suffered from mental and physical illness.  The limitations period ran for 103 days, from June 17, 2006 through September 28, 2006, when Petitioner filed his state habeas petition.  Petitioner is entitled to statutory tolling during the entire time his collateral review was pending in state court -- from September 28, 2006 through June 20, 2007.  See Carey v. Saffold, 536 U.S. 214, 223 (2002) (The limitations period is also

tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court.).  The limitations period began to run again between the California Supreme Court's denial of his petition on June 21, 2007 and the filing of his federal habeas petition on July 19, 2007 (28 days).  Because a total of only 131 days (103 days plus 28 days) of the limitations period elapsed, the present petition is timely filed.[3]

CONCLUSION

For the foregoing reasons,

1.  Upon reviewing Petitioner's complete medical record, the Court finds an evidentiary hearing is not necessary because the record is sufficiently developed to show that Petitioner is entitled to equitable tolling during the relevant five-year period he suffered from mental and physical illness.

2.  Because the Ninth Circuit has vacated the Court's July 16, 2008 Order Granting Respondent's Motion to Dismiss, the Court now DENIES the motion to dismiss the petition as untimely and directs the parties to abide by the following briefing schedule:

a.  Within <u>sixty (60) days</u> of the date of this Order, Respondent shall file an Answer showing cause why a writ of habeas corpus should not be issued.  Respondent shall file with the Answer a copy of all state records that have been transcribed

---

[3] As mentioned in footnote two above, if Petitioner were not entitled to equitable tolling for the period after November 1, 2005 (when he may have resumed his normal diet), then the limitations period would have run from November 2, 2005 until September 28, 2006 (330 days).  It would have also been statutorily tolled while he pursued his state court remedies and then it would have run again from June 21, 2007 through July 19, 2007 (28 days).  Only 358 (330 days plus 28 days) of the limitations period would have elapsed when Petitioner filed his federal petition; therefore, it would have still been timely filed.

**United States District Court**
For the Northern District of California

previously and that are relevant to a determination of the issues presented by the petition.

b.   If Petitioner wishes to respond to the Answer, he shall do so by filing a Traverse with the Court and serving it upon Respondent within <u>thirty (30) days</u> of his receipt of the Answer.   Should Petitioner fail to do so, the petition will be deemed submitted and ready for decision <u>thirty (30) days</u> after the date Petitioner is served with Respondent's Answer.

3.   It is Petitioner's responsibility to prosecute this case.   Petitioner must keep the Court and Respondent informed of any change of address and must comply with the Court's orders in a timely fashion.   Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

4.   Extensions of time are not favored, though reasonable extensions will be granted.   Any motion for an extension of time must be filed no later than <u>ten (10) days</u> prior to the deadline sought to be extended.

5.   This Order terminates Docket no. 6.

6.   The Clerk shall send a copy of this Order to the Ninth Circuit.

IT IS SO ORDERED.

DATED: 9/22/2010

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

FREDERICK GATLIN,

        Plaintiff,

    v.

JAMES TILTON et al,

        Defendant.

Case Number: CV07-03696 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 22, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Frederick  Gatlin P-19908
California Medical Facility
P-141-L
P.O. Box 2000
Vacaville,  CA 95696-2000

Dated: September 22, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

G:\PRO-SE\CW\HC.07\Gatlin3696.remand-MTD.frm          14

*United States District Court*
*For the Northern District of California*